1
2
3
4

UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,

    Plaintiff,

    v.

$75,000 in U.S. CURRENCY representing
25 Puerto Rican lottery tickets,

    Defendant.

Civil No. 3:14-cv-01822 (JAF)

5
6

**O R D E R**

7

**I.**

8

**Introduction**

9       This matter is before the court on the Government's amended motion to strike

10   Robinson Bastardo's verified statement of claim. (Docket No. 20.)  Claimant Bastardo

11   responded in opposition.  (Docket No. 28.)  Upon review of the briefs and case law, the

12   court finds the Government's motion well-taken.  Claimant Robinson Bastardo's claim is

13   hereby STRICKEN.

14

**II.**

15

**Facts and Procedural History**

16      On August 5, 2014, U.S. Customs and Border Protection Officers inspected

17   passengers arriving at the Luis Muñoz Marín International Airport in Carolina, Puerto

18   Rico, from Santo Domingo, Dominican Republic.  Passenger Manuela Aurora Bastardo-

19   Guzmán ("Ms. Bastardo") declared that she had arrived in Puerto Rico from the

20   Dominican Republic for the purpose of redeeming Puerto Rican lottery tickets she carried

21   on behalf of her brother Robinson Bastardo-Guzmán ("Claimant Bastardo").  Upon

Civil No. 3:14-cv-01822 (JAF)                                                        -2-

1    interviewing Ms. Bastardo, HSI San Juan Special Agents seized from her twenty-five

2    Puerto Rico traditional lottery tickets pursuant to Title 19, United States Code, Section

3    1305.

4          On November 13, 2014, Plaintiff United States of America (the "Government")

5    filed a verified complaint for forfeiture *in rem* against the Defendant, $75,000 in United

6    States currency representing 25 Puerto Rican lottery tickets. The Government sent service

7    of process to potential claimants Manuela Bastardo and Robinson Bastardo on

8    November 19, 2014, and executed service on December 4, 2014, and December 15, 2014,

9    respectively.  The Government published notice of the seizure of the lottery tickets for

10   thirty consecutive days, from November 19, 2014, through December 18, 2014, allowing

11   any person having a claim in the Defendant currency to state the same before the court.

12         On January 22, 2015, Claimant Bastardo filed a Verified Statement of Claim

13   signed by his sister, Manuela Aurora Bastardo-Guzmán (Docket No. 14). The

14   Government moved to strike Claimant Bastardo's claim for lack of standing and

15   ownership pursuant to Rule G(8)(c)(i)(A) and G(8)(c)(i)(B) of the Supplemental Rules

16   for Admiralty or Maritime Claims and Asset Forfeiture Actions. (Docket Nos. 16 and

17   20.)  The Government also moved for a default decree of forfeiture. (Docket No. 19.)

18         Claimant Bastardo first attempted to answer the Verified Complaint on

19   February 22, 2015.  (Docket No. 21.) This initial attempt does not include Bastardo's

20   signature and is signed only by his attorney, along with a verified statement from

21   Ms. Bastardo.  (Docket No. 21.)  During a Pretrial Conference held on February 23,

22   2015, the court advised that since Claimant Bastardo had signed neither the initial answer

Civil No. 3:14-cv-01822 (JAF)                                                    -3-

1    nor the verified claim, both were invalid.  The court then granted Claimant Bastardo until

2    March 10, 2015, to respond to the Government's motion to strike.  (Docket No. 23.)

3         On March 10, 2015, Bastardo moved to file an amended verified claim that

4    included his signature (Docket No. 25), and requested a three-day extension to respond in

5    opposition to the Government's motion to strike (Docket No. 26).  Despite the court's

6    extension through March 13, 2015 (Docket No. 27), Claimant Bastardo responded in

7    opposition on March 14, 2015, a day late.  (Docket No. 28.)

8         Accordingly, the matter is fully briefed and ripe for review.

9                                    **III.**

10                           **Law and Analysis**

11        The Government moves pursuant to Rule G(8)(c)(i)(B) of the Supplemental Rules

12   for Admiralty or Maritime Claims and Asset Forfeiture Actions to strike Claimant

13   Bastardo's verified statement of claim. (Docket No. 20.)  Rule G(8)(c)(i)(B) allows the

14   government to move to strike a claim for lack of standing.  In response to a motion to

15   strike a claim, the burden is on the claimant to establish standing by a preponderance of

16   the evidence. Rule G(8)(c)(ii)(B); *United States v. $8,440,190.00 in U.S. Currency*, 719

17   F.3d 49, 57 (1st Cir. 2013). "To demonstrate standing, the claimant must start by

18   demonstrating an ownership or possessory interest in the seized property."  *U.S. v.*

19   *$8,440,190.00 in U.S. Currency,* 719 F.3d at 57 (citation omitted). "Courts generally do

20   not deny standing to a claimant who is either the colorable owner of the property or who

21   has any colorable possessory interest in it." *Id*. (citation omitted).

Civil No. 3:14-cv-01822 (JAF)                                                    -4-

1      Claimant Bastardo cannot demonstrate an ownership interest in the seized

2   property.   The Government seized the lottery tickets pursuant to 19 U.S.C. §1305(a),

3   which provides that:

> 4        All persons are prohibited from importing into the United
> 5        States from any foreign country … any lottery ticket, or any
> 6        printed paper that may be used as a lottery ticket, or any
> 7        advertisement of any lottery. No such articles whether
> 8        imported separately or contained in packages with other
> 9        goods entitled to entry, shall be admitted to entry; and all
> 10       such articles and, unless it appears to the satisfaction of the
> 11       appropriate customs officer that the obscene or other
> 12       prohibited articles contained in the package were enclosed
> 13       therein without the knowledge or consent of the importer,
> 14       owner, agent, or consignee, the entire contents of the package
> 15       in which such articles are contained, shall be subject to
> 16       seizure and forfeiture as hereinafter provided[.]

17
18  The Government argues that the defendant lottery tickets were not allowed to be brought

19  into the United States from the Dominican Republic – or any foreign country, that

20  Ms. Bastardo's attempt to bring the lottery tickets into Puerto Rico violated federal law,

21  and that the lottery tickets are contraband and, therefore, subject to forfeiture.

22      Ms. Bastardo arrived in Puerto Rico off a plane from the Dominican Republic, a

23  foreign country,[1] for the purpose of obtaining payment on the lottery tickets.

24  Ms. Bastardo admitted this to the agents who questioned her and has never contradicted

25  her statement.  Claimant Bastardo does not dispute these facts.

26      Because the lottery tickets could not legally enter the United States, "a cognizable

27  property interest never materialized."  *See United States v. Two Mitsubishi Pick-up*

28  *Trucks*, 396 F.Supp.2d 117, 121 (D. Puerto Rico Oct. 24, 2005) (citing 18 U.S.C.

---

[1] There is no dispute that the Dominican Republic is a foreign country.

1    § 983(d)(4) ("[N]o person may assert an ownership interest under this subsection in

2    contraband or other property that it is illegal to possess."). and *United States v.*

3    *Approximately 600 Sacks of Green Coffee Beans*, 381 F.Supp.2d 57, 62 (D.P.R. 2005)

4    (Coffee beans illegally imported into Puerto Rico were contraband and subject to

5    forfeiture.).

6           Claimant Bastardo's remaining argument[2] is that Ms. Bastardo was not

7    "importing" the lottery tickets, and, therefore, the statute does not apply.  "The starting

8    point in statutory interpretation is the language of the statute itself." *United States v.*

9    *Ramirez-Ferrer,* 1995 WL 237041, *15 (1st Cir. 1995) (internal quotation marks omitted)

10   (*citing United States v. James*, 478 U.S. 597, 604 (1986)). Here, 19 U.S.C. § 1305 does

11   not define "import."   Claimant Bastardo argues that "importation" means "the act of

12   bringing something into a country to be sold." (Docket No. 28 at 4, citing Webster's

13   Dictionary without appropriate citation.)

14          To interpret the term "import" as prohibiting only lottery tickets for sale or

15   commercial purpose is contrary to the purpose of the statute and Supreme Court case law.

16   *See United States v. Thirty-Seven (37) Photographs*, 402 U.S. 363, 375-376 (1971)

17   (Importation of obscene materials' statute, 19 U.S.C. 1305(a), applies to one seeking to

18   bring materials into the U.S. whether for personal use or public distribution.).  Puerto

19   Rico traditional lottery tickets have been for years an instrument for money laundering.

20   These tickets are for sale in Puerto Rico only, yet they make their way to the states and

21   even into foreign countries.  Throughout the years, we have seen instances of sale of

---

[2] In fact, Claimant Bastardo's attorney made this argument during the hearing held on February 23, 2015, and again in his response brief. (See Docket No. 28 at 3-4.)

1    prized tickets to foreign markets at a premium.  When cashed in Puerto Rico, the prize is

2    tax free.  The court has no evidence that this is the case here, but the fact remains that this

3    case fits the fact pattern.

4          The term "import" in § 1305 includes the act of bringing Puerto Rico lottery

5    tickets into Puerto Rico from a foreign country by any person. The court's interpretation

6    is supported by other cases similarly involving the attempt to bring lottery tickets into

7    Puerto Rico.  In *Couvertier v. Bonar*, the First Circuit determined that Section 1305

8    applies to Puerto Rico lottery tickets brought into Puerto Rico to be redeemed.  173 F.3d

9    450, 453 (1st Cir. 1999); *see also United States v. Fourteen Thousand Eight Hundred and*

10   *Seventy-Six Pieces of Puerto Rico Lottery Tickets*, 791 F.Supp. 345 (D.P.R. 1992)

11   (involving the importation of lottery tickets from St. Maarten to Puerto Rico for the

12   purpose of collecting the prize value of the tickets).

13         The First Circuit previously declared that 19 U.S.C. § 1305 applies to <u>all</u> lottery

14   tickets, regardless of whether the tickets are prized or non-prized.  *Couvertier*, 173 F.3d

15   at 453 (*emphasis added*).  Claimant Bastardo, a Dominican residing in Tortola, British

16   Virgin Islands, purchased the lottery tickets in Barbados.  He then asked his sister to

17   transport the tickets from the Dominican Republic to Puerto Rico to collect the prizes

18   associated with the tickets.  Because Ms. Bastardo attempted to bring the lottery tickets

19   into Puerto Rico from the Dominican Republic, the lottery tickets could not legally enter

20   the United States and are, thus, forfeitable.

21         Moreover, Claimant Bastardo cannot take shelter with the innocent-owner defense

22   in 18 U.S.C. § 983(d) as it does not apply to property that is in itself illegal. *See* 18

1    U.S.C. § 983(i); *and see U.S. v. Two Mitsubishi Pick-up Trucks*, 396 F.Supp.2d at 121;

2    *U.S. v. Approximately 600 Sacks of Green Coffee Beans*, 381 F.Supp.2d at 62.  The court

3    notes that this is not a case in which an individual purchased lottery tickets while in

4    Puerto Rico, flew to another country for a vacation, and realized once he had left the

5    country that he had Puerto Rico lottery tickets in his pocket.  Claimant Bastardo makes

6    no such assertion.  In fact, Claimant Bastardo does not dispute that he purchased the

7    tickets outside of Puerto Rico and then requested that Ms. Bastardo enter the United

8    States with the lottery tickets for the sole purpose of claiming the prized value of the

9    tickets on his behalf.

10       Accordingly, Claimant Robinson Bastardo cannot demonstrate an ownership

11   interest in lottery tickets and lacks standing to assert a claim against the Defendant

12   property.  Pursuant to Supplemental Rule for Admiralty or Maritime Claims and Asset

13   Forfeiture Actions G(8)(c)(i)(B), the Government's motion to strike Robinson Bastardo

14   Guzman's claim is hereby GRANTED.

15       The Government also moves to strike Claimant Bastardo's claim pursuant to Rule

16   G (8)(c)(i)(A) for failing to properly verify his claim and for failing to timely file an

17   answer or verified claim. Claimant Bastardo moved to file an amended verified claim in

18   an effort to fix the invalid claim made on Defendant Property.   (Docket No. 25.)

19   However, neither Claimant Bastardo's amended claim nor his answer can correct the

20   standing issue addressed above.  Accordingly, Claimant Bastardo's motion to file an

21   amended verified claim is denied.  Having found that Claimant Bastardo lacks standing to

Civil No. 3:14-cv-01822 (JAF)                                                                    -8-

1    assert a claim over the Defendant Property, the court need not decide the Government's

2    motion pursuant to Rule G (8)(c)(i)(A).

3                                               **IV.**

4                                        **<u>Conclusion</u>**

5          Accordingly, for the aforementioned reasons, the government's motion (Docket

6    No. 20) is **GRANTED**, and Claimant Bastardo's claim for the Defendant Property

7    (Docket No. 14) is hereby **STRICKEN**.  Claimant Robinson Bastardo's motion to amend

8    his verified claim (Docket No. 25) is **DENIED**.

9          **IT IS SO ORDERED.**

10         San Juan, Puerto Rico, this 7th day of April, 2015.

11                                                          <u>S/José Antonio Fusté</u>
12                                                          JOSE ANTONIO FUSTE
13                                                          U. S. DISTRICT JUDGE